**Not for publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JANINE EUBANKS,

    *Plaintiff*,

v.

RIDGELINE MOTORS LLC & NICK TURSI,

    *Defendants*.

Civil Action No. 21-20129

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Currently pending before the Court is the unopposed motion for default judgment brought by Plaintiff Janine Eubanks.  D.E. 13.  The Court reviewed all submissions made in support of the motion[1] and considered the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).  For the reasons that follow, Plaintiff's motion is **GRANTED**.  The Court, however, will direct Plaintiff to submit proof regarding the value of vehicle and to indicate whether she seeks damages relating to the vehicle under the New Jersey Consumer Fraud Act or under her claims for breaches of warranties or conversion.

---

[1] For purposes of this opinion, the First Amended Complaint, D.E. 4, will be referred to as "FAC." Plaintiff's brief in support of the motion, D.E. 13-1, will be referred to as "Pl. Br."

1

**I.     BACKGROUND**

The Court incorporates by reference its prior discussions of this matter's factual predicate, D.E. 5, and relies on the facts presented in Plaintiff's FAC. Plaintiff Janine Eubanks is a resident of Maryland. FAC ¶ 2. In March 2020, Plaintiff purchased a 2007 Volkswagen Passat, Wolfsburg Edition ("the Vehicle") from Defendant Nick Tursi for $2,500 in cash at Ridgeline Motors, LLC ("Ridgeline"). FAC ¶¶ 6, 8. Ridgeline is in Ledgewood, New Jersey, *see* D.E. 1, and Tursi owns Ridgeline, FAC ¶ 3. When Plaintiff purchased the Vehicle, Tursi provided Plaintiff with a "temporary tag," told Plaintiff that Defendants would register the Vehicle with the State of New Jersey, and expressed both orally and in a signed agreement that the Vehicle would be "Guaranteed to Pass State Inspection." *Id.* ¶¶ 9-10, 13. Plaintiff saw that the Vehicle's "check engine light" was on, but Tursi assured her "it was probably an issue with the sensor, and it would go away." *Id.* ¶ 12. Plaintiff brought the Vehicle back to Defendants two days later and again at the end of March because the "check engine light" remained illuminated. *Id.* ¶¶ 14, 16. Both times, Defendants looked at the car and claimed to have fixed the issue. *Id.* ¶¶ 15, 17-19.

In April 2020, the Vehicle "completely shut off," and Plaintiff had it towed to Ridgeline. *Id.* ¶¶ 20-21. Defendants kept it for a few weeks and then returned it to Plaintiff, claiming nothing was wrong. *Id* ¶ 22. After the "check engine light" came on yet again in May 2020, Plaintiff took the Vehicle to Jefferson Auto Repair ("Jefferson Auto"), where a mechanic performed a diagnostic test for $600. *Id.* ¶¶ 24-26. The mechanic informed Plaintiff that there were "major preexisting issues with the engine" and estimated that a new part for the engine would cost $2,700. *Id.* ¶ 28. After informing Defendants of Jefferson Auto's diagnosis, Defendants again took temporary possession of the Vehicle on July 15, 2020 and agreed to pay for half of the cost of repairing the engine. *Id.* ¶¶ 29-30.

2

Defendants kept the Vehicle until the end of September 2020, at which point Defendants returned it to Plaintiff and said they would not pay for the repair. *Id.* ¶ 32. The "check engine light" was still on, and on October 2, 2020, the Vehicle "completely shut off in the middle of the [New Jersey] Turnpike." *Id* ¶¶ 33-34. Plaintiff had the Vehicle towed back to Defendants, and on October 5, 2020, Defendants stated they would repair it. *Id.* ¶¶ 37-39. Since then, however, Plaintiff has not heard back from Defendants, despite numerous attempts to contact them by phone between October 5, 2020, and June 20, 2021. *Id.* ¶¶ 40, 44-45.

Before Defendants took possession of the Vehicle, Plaintiff earned an average of $170 per day working as a "personal shopper" who made deliveries through services such as Insta-Cart and Postmates. *Id.* ¶ 53. At the time Plaintiff filed the FAC, Plaintiff had lost over fifty-two weeks' worth of income. *Id.* ¶ 54.

Plaintiff commenced this action on November 19, 2021, seeking damages and lost wages for Defendants' (1) breach of the Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. § 2301 *et seq.*; (2) breach of implied warranty of merchantability; (3) breach of express warranty; (4) conversion; and (5) breach of the New Jersey Consumer Fraud Act ("the CFA"), N.J. Stat. Ann. § 56:8-19. D.E. 1. The Court dismissed Plaintiff's initial Complaint without prejudice on November 29, 2021. D.E.3. Plaintiff filed the FAC on December 1, 2021, and the Court allowed Plaintiff's claims to proceed. D.E. 4; D.E. 5.

On February 17, 2022, the Clerk of the Court entered default. On May 6, 2022, Plaintiff moved for a default judgment pursuant to Federal Rule of Civil Procedure 55(b). D.E. 13. Plaintiff seeks the $2,500 value of the Vehicle as a remedy for her warranty claims as well as for her conversion claim. Pl. Br. at 13-14. Plaintiff additionally seeks treble damages under the CFA in the amount of $271,744, which is equal to $65,436 in lost wages and the $2,500 value of the

vehicle, plus three times the amount of "$65,436 in lost wages over 82 weeks" combined with $2,500 in lost property for the Vehicle. Pl. Br. at 21-22.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55 permits the entry of default judgment against a properly served defendant who fails to plead or otherwise defend against claims. Fed. R. Civ. P. 55. "The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such 'discretion is not without limits, . . . and [has] repeatedly state[d] [its] preference that cases be disposed of on the merits whenever practicable.'" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). "Once a party has defaulted, the consequence is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011) (quoting *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005)).

Prior to entering a default judgment against Defendants, the Court must consider whether (1) it has personal and subject matter jurisdiction; (2) Defendants were properly served; (3) the FAC sufficiently pleads a cause of action; and (4) Plaintiff has proven damages. *Days Inns Worldwide, Inc. v. Jinisha Inc.*, No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015). The Court must also assess the propriety of a default judgment by examining (1) the prejudice suffered by Plaintiff if her motion is denied; (2) whether Defendants have any meritorious defense; and (3) Defendants' culpability. *Id.* at *2.

### III.     ANALYSIS

#### A.  Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (quoting *Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C.*, No. 05-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)).

Plaintiff asserts federal question jurisdiction pursuant to the MMWA. *See* FAC ¶¶ 1, 4. Federal question jurisdiction is governed by 28 U.S.C § 1331. Plaintiff invokes the Court's supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a). FAC ¶ 4. The Court previously determined that it has subject-matter jurisdiction over all of Plaintiff's claims. D.E. 5 at 5-6, 10. Plaintiff's motion presents the same claims and relies on the same facts as her FAC. FAC ¶ 4; Pl. Br. at 10. As a result, the Court has subject-matter jurisdiction.

There are numerous ways in which a plaintiff can demonstrate personal jurisdiction, including waiver, consent, in-state service on an individual, general jurisdiction, and specific jurisdiction. Service of process effectively establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A); *see also HICA Educ. Loan Corp.*, 2015 WL 273656, at *2 (finding proof of personal jurisdiction where Defendant was served in the state of New Jersey). Additionally, a court may exercise personal jurisdiction over an out-of-state defendant who has "'purposefully directed' his activities at the residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 472-73 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984)).

Here, the Court may exercise specific jurisdiction over Tursi because Plaintiff's claims arise out of a sales contract he entered into with Plaintiff in New Jersey. *See* FAC ¶ 6, 8, 13. The Court may also exercise specific personal jurisdiction over Ridgeline because Plaintiff's claims arise out of a sales contract Ridgeline entered into at its address in New Jersey. *See id.* ¶ 6. Thus, the Court has personal jurisdiction over Defendants.

### B. Sufficiency of Proof of Service

"Before the Court can enter default judgment, it must find that process was properly served on the Defendant." *Teamsters Pension Fund of Phila.*, 2011 WL 4729023, at *2 (citing *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985)). Tursi, an individual, may be served by "delivering a copy of the summons and of the complaint to [him] personally." Fed. R. Civ. P. 4(e)(2)(A). Ridgeline, an unincorporated association, may be served in a judicial district of the United States "in the manner prescribed by [Federal Rule of Civil Procedure] 4(e)(1) for serving an individual[,]"[2] Fed. R. Civ. P. 4(h)(1)(A), or by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any agent authorized by appointment or by law to receive service of process[.]" Fed. R. Civ. P. 4(h)(1)(B). New Jersey Court Rule 4:4-4(a)(5) provides that service in New Jersey may be obtained by personally serving the summons and complaint "[u]pon partnerships and unincorporated associations subject to suit under a recognized name, by serving a copy of the summons and complaint in a manner prescribed by

---

[2] Federal Rule of Civil Procedure 4(e)(1) provides that service can be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]"

6

paragraph (a)(1)[3] of this rule on an officer or managing agent or, in the case of a partnership, a general partner[.]" N.J. Ct. R. 4:4-4(a)(5). Plaintiff alleges that "[u]pon information of belief, [Tursi] is the owner of [Ridgeline]." FAC ¶ 3. Therefore, Defendants were properly served when a deputy U.S. Marshal personally delivered a copy of the FAC and Summons to Tursi at the address for Ridgeline. D.E. 9; D.E. 10.

### C. Sufficiency of Plaintiff's Causes of Action

Plaintiff alleges five causes of action: (1) breach of the MMWA; (2) breach of implied warranty of merchantability; (3) breach of express warranty; (4) conversion; and (5) breach of the New Jersey CFA. *See* FAC ¶¶ 63, 68-71, 73, 78-79, 82. Plaintiff sufficiently pleads all five causes of action, and therefore satisfies this requirement in her motion for default judgment.

#### 1. The MMWA

The MMWA creates a private, federal right of action for "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under any written warranty, implied warranty, or service contract[.]" 15 U.S.C. § 2310(d)(1). "A claim under the MMWA relies on the underlying state claim." *Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011). In other words, "MMWA claims are coextensive with underlying state law breach of warranty claims and are therefore, dependent on, and derivative of, said state claims for survival in a motion to dismiss." *Guardavacarro v. Home Depot*, No. 16-8796, 2017 WL 3393812, at *9 (D.N.J Aug. 8, 2017) (citing *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010)). Therefore, whether Plaintiff sufficiently

---

[3] New Jersey Court Rule 4:4-4(a)(1) provides that service in New Jersey may be provided "upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally . . . or by delivering a copy [at the individual's dwelling place or usual place of abode] to a person authorized by appointment or by law to receive service of process on the individual's behalf."

pleads a breach of the MMWA depends on whether Plaintiff properly pleads her state-law implied and express warranty claims. Because Plaintiff adequately pleads her state-law implied and express warranty claims, Plaintiff adequately pleads her MMWA claim.

### 2. Breach of Implied Warranty, Breach of Express Warrant, and Conversion

In its Prior Opinions, the Court found that Plaintiff adequately pleaded a claim for breach of the implied warranty of merchantability. *See* D.E. 3 at 7-8; D.E. 5 at 5. Plaintiff relies upon the same allegations in the instant motion. As a result, the Court finds that Plaintiff adequately pleads a claim for breach of the implied warranty of merchantability.

The Court found in its Prior Opinion that Plaintiff had also pled a violation of N.J. Stat. Ann. § 12A:2-313 for breach of express warranty. D.E. 5 at 6. Again, Plaintiff relies on the same allegations in the FAC. Plaintiff sufficiently pleads a claim for breach of express warranty.

As the Court held in its Prior Opinion, Plaintiff also states a claim for common-law conversion. *Id.* at 7. The Court adheres to that ruling because Plaintiff raises the same allegations in support of the claim.

### 3. The New Jersey Consumer Fraud Act

Finally, Plaintiff sufficiently pleads that Defendants violated the New Jersey Consumer Fraud Act. The Court held in its Prior Opinion that Plaintiff plausibly pled she would be entitled to at least $52,000 in lost wages as an ascertainable loss and that the lost wages were caused by Defendants' unlawful acts or omissions. D.E. 5 at 10-11. Plaintiff sufficiently pleads that Defendants violated the CFA.

### D. Damages

Plaintiff has not sufficiently proven damages. In a default judgment, while the factual allegations pled in the Complaint "will be taken as true," Plaintiff must still prove the amount of

damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). Further, courts have "considerable latitude in determining the amount of damages" to award with respect to a motion for default judgment. *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016). Plaintiff seeks the $2,500 value of the Vehicle as a remedy for her warranty claims as well as for her conversion claim. Pl. Br. at 13-14. Plaintiff also seeks damages under the CFA in the amount of $271,744, which is equal to treble damages for $65,436 in lost wages together with the $2,500 value of the vehicle.[4] *Id*. at 21-22.

The Court held in its Prior Opinion that Plaintiff had adequately *pled* that her lost wages were an ascertainable loss within the meaning of the CFA. D.E. 5 at 10. At this stage, however, Plaintiff must do more than adequately plead a claim—she must affirmatively prove her entitlement to damages. *Comdyne*, 908 F.2d at 1146. The New Jersey CFA provides that "any person who suffers any ascertainable loss of moneys or property" as a result of another person's unlawful act under the CFA may bring action, and "the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest." N.J. Stat. Ann. § 56:8-1. To receive an award of treble damages under the CFA, a plaintiff must provide proof of a clear causal relationship between the defendant's conduct and the ascertainable loss. *D'Agostino v. Maldonado*, 78 A.3d 527, 537 (N.J. 2013); *see also Romero v. Gold Star Distrib., LLC*, 257 A.3d 1192, 1209-1210 (N.J. Super. Ct. App. Div. 2021) (finding entitlement to treble damages for lost wages where the defendant's misrepresentation of an illicit substance directly caused the plaintiff's prohibition from fighting for six months). The Court has

---

[4] Plaintiff provided an invoice from Jefferson Auto, where Jefferson Auto charged her $479.65 for diagnostic of the vehicle. D.E. 13-4. Plaintiff does not appear to seek damages to recoup the cost of Jefferson Auto's diagnostic of the vehicle, however. *See* Pl. Br. at 21-22. If Plaintiff seeks damages for Jefferson Auto's diagnostic of the vehicle, she must specify as such.

9

concerns with both Plaintiff's proof of income and, more importantly, the attenuation between the complained-of conduct—false representations made in connection with the sale of an automobile—and the complained-of injury—a year's worth of lost wages.

Although Plaintiff asks for a year's worth of lost wages, she provides proof of only one week's worth of earnings from gig-work that would not, at first blush, provide a consistent level of income. *See* D.E. 13-5. While a plaintiff need not prove damages with exact accuracy, she must "prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate." *Caldwell v. Haynes*, 643 A.2d 564, 571 (N.J. 1994) (quoting *Lane v. Oil Delivery, Inc.*, 524 A.2d 405, 409 (N.J. Super. Ct. App. Div. 1987)). One week is an insufficient period for proof of average wages over a full calendar year.

Moreover, Plaintiff's has not established that her lost wages have a sufficient a causal relationship and warrant treble damages under the CFA. New Jersey "[c]ourts have generally found causation to be established for CFA purposes when a plaintiff has demonstrated a direct correlation between the unlawful practice and the loss; they have rejected proofs of causation that were speculative or attenuated." *Heyert v. Taddese*, 70 A.3d 680, 700 (N.J. Super. Ct. App. Div. 2013).

Plaintiff's lost wages claim, however, requires the addition of further links to the chain of causation. *Romero* is the only decision this Court could find in which a court awarded lost wages as ascertainable loss pursuant to the CFA. In *Romero*, the defendant's misrepresentation that its dietary supplement was free of any illicit substances was the sole reason why plaintiff could not compete as a professional fighter. 257 A.3d at 1197. His loss was a direct result of the defendant's misrepresentation that the product contained no banned substances. *Id.* Specifically, Romero was

randomly drug-tested and tested positive for a banned substance. *Id.* Before taking the product, Romero had never "tested positive for a banned substance in his athletic career." *Id.* His six-month ban was directly and solely based on that positive test. *Id.* What's more, when the product itself, SHRED RX, was tested, it was found to contain the precise substance that Romero was punished for taking. *Id.* at 1197-98. The bottles in which SHRED RX were sold did not list ibutamoren as an ingredient. *Id.* at 1198.

Further, Romero was an experienced and high-level professional fighter. *See id.* at 1197 (describing Romero as "a professional mixed martial arts (MMA) athlete who competed in the Ultimate Fighting Championship (UFC), the highest level of competition in MMA. He is also a former world champion freestyle wrestler who earned a silver medal at the 2000 Olympic Games."). Plaintiff represented that he was a leading contender for a UFC title before he was banned for doping. *Id.* As a result, the Appellate Division sustained the finding that the money Romero lost from not being able to compete or otherwise pursue his profession was an ascertainable loss. *Id.* at 1209-10.

In contrast, Plaintiff's inability to work is not nearly so closely related to the misconduct she pleads Defendants committed—misrepresenting whether an automobile would pass state inspection and had a fit engine. In *Romero* the promise that the product "was free of any substances banned by the World Anti-Doping Agency[,]" *id.* at 1197, specifically contemplated that an athlete could ingest SHRED RX without worrying about whether he or she could still engage in a regulated professional sporting competition. Here, Defendants' promises were far more limited—they represented only that the Vehicle was fit to use as a means of transportation. Even if that representation was false, it requires further inferential leaps to arrive at the conclusion that that lie

11

proximately caused Plaintiff's lost wages.  In light of the paucity of New Jersey cases awarding lost wages as ascertainable loss, the Court finds Plaintiff's proofs have fallen short.

Additionally, New Jersey law imposes on plaintiffs a general duty to mitigate their damages.  "An injured party must take reasonable steps to mitigate its damages, or else '[d]amages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts without undue risk, burden or humiliation.'"  *Natreon, Inc. v. Ixoreal Biomed, Inc.*, No. 16-4735, 2017 WL 3131975, at *7 (D.N.J. July 21, 2017) (alteration in original) (quoting *Sean Wood, L.L.C. v. Hegarty Grp., Inc.*, 29 A.3d 1066, 1078 (N.J. Super. Ct. App. Div. 2011)).  Courts have upheld this defense in a variety of contract, tort, and property-law settings.  *See New Jersey ex rel. Comm'r of Transp. v. Weiwasser*, 693 A.3d 864, 868-69 (N.J. 1997).  Plaintiff details how she was misled by Defendants' representations and how the Vehicle failed to perform as promised.  However, Plaintiff does not indicate any steps she took to get another job, if she got another job, what that job was, and what she earned doing that work.  Similarly, Plaintiff fails to explain why there were no other reasonable measures that she could have undertaken to continue in her line of work.

Furthermore, Plaintiff has not sufficiently proven damages for the value of the Vehicle.  If Plaintiff seeks damages for loss of the Vehicle under breach of warranty or conversion, Plaintiff must submit documents—including, for example, a receipt for the purchase or a bill of sale–that support purchase of the Vehicle and the price Plaintiff paid.  However, if Plaintiff does not have such documents, she may alternatively submit a sworn statement as to the purchase price of the Vehicle.

In her brief, Plaintiff seeks the $2,500 purchase price of the Vehicle as a remedy for her warranty claims as well as remedy for her conversion claim.  Pl. Br. at 13-14.  New Jersey law

provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." N.J. Stat. Ann. § 12A:2-714; *see also Perth Amboy Iron Works, Inc. v. Am. Home Assurance Co.*, 543 A.2d 1020, 1030 (N.J. Super. Ct. App. Div. 1988) (holding that "diminution in value is the standard measure of damages in breach of warranty cases"). New Jersey law also provides that a party who prevails on a claim of conversion may recover "the full value of the chattel." *Meisels v. Fox Rothschild*, 222 A.3d 649, 660 (N.J. 2020) (quoting *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 287 (N.J. Super. Ct. App. Div. 2009)).

The cost of the Vehicle is an ascertainable loss within the meaning of the CFA. The New Jersey CFA does not provide a precise or intended meaning of an "ascertainable loss," but in cases that involve breach of contract or misrepresentation, a plaintiff "must proffer evidence of loss that is not hypothetical or illusory." *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005). For cases involving automobiles, courts have measured these damages by applying either the "benefit of the bargain" rule, which allows recovery for the difference between the price paid and the value of the property if the representations had been true, or the "out of pocket" approach, which allows recovery for the difference between the price paid and the actual value of the property acquired. *Romano v. Galaxy Toyota*, 945 A.2d 49, 57 (N.J. Super. Ct. App. Div. 2008); *Wildy v. M&R Auto Sales, Inc.*, 2011 WL 6121, at *4 (N.J. Super. Ct. App. Div. June 18, 2010). *See also Real v. Radir Wheels, Inc.*, 969 A.2d 1069, 1079 (N.J. 2009) (affirming that the ascertainable loss under the CFA for a used vehicle is equal to the difference between the purchase price and the actual value of the vehicle delivered). These damages are "designed to put the injured party in as good a position as he would have had if performance had been rendered as promised."

13

*Romano*, 945 A.2d at 57 (N.J. Super. Ct. App. Div. 2008) (quoting *525 Main St. Corp. v. Eagle Roofing*, 168 A.2d 33 (N.J. 1961)) (internal quotations omitted).

However, Plaintiff's case differs from those because Defendants have kept possession of the Vehicle since October 2, 2020. FAC ¶ 41. In other words, the current value of Plaintiff's interest the Vehicle, from Plaintiff's perspective, is $0. Thus, taking Plaintiff's well-pled allegations as true, the Court finds that Plaintiff's loss of the Vehicle would constitute a sufficient loss in value that is not "hypothetical or illusory" and that awarding damages equivalent to the purchase price of the Vehicle would not go beyond making Plaintiff whole. If Plaintiff seeks damages under the CFA for loss in value of the Vehicle, Plaintiff must submit any documents that support purchase of the vehicle and the purchase price of the Vehicle.

That being said, because the CFA does not allow for duplicative damages for the same economic loss, Plaintiff is only entitled to recover the value of the Vehicle under the warranty claims, common-law conversion, or the CFA. The CFA provides that the remedies under its provisions are "declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition." N.J. Stat. Ann. § 56:8-2.13. However, the CFA does not sanction duplicative damages for the same economic or ascertainable loss. *49 Prospect St. Tenants Assoc. v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1149-51 (N.J. Super. Ct. App. Div. 1988). Plaintiff therefore may only recover the purchase price of the Vehicle under either the breach of warranties claims or the CFA claim.

### E. Default Judgment Factors

Prior to entering default judgment, the Court must assess (1) the potential prejudice suffered by Plaintiff if default judgment is not entered, (2) whether Defendants have a meritorious defense, and (3) Defendants' culpability. *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *Moroccanoil, Inc. v. JMG Freight Grp. LLC*, No. 14-5608, 2015 WL 6673839, at *1 (D.N.J. Oct. 30, 2015). Here, all three factors support the entry of default judgment. First, Plaintiff is prejudiced by Defendants' failures to respond because, due to Defendants' unresponsiveness, Plaintiff has been left without a car and deprived of her opportunity to earn income. Second, because Defendants have not responded in this matter, they have "put forth no evidence or facts containing any information that could provide the basis for a meritorious defense." *HICA Educ. Loan Corp.*, 2015 WL 273656, at *3. However, as to damages, Defendants could have raised a defense based on Plaintiff's failure to mitigate her damages, as discussed above. *Natreon*, 2017 WL 3131975, at *7 ("Under New Jersey law, failure to mitigate is considered an affirmative defense."). Third and finally, Defendants' failure to answer evidences culpability in their default. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No.11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011). This inference is further supported by Defendants' failure to respond without providing any explanation, despite receipt of personal process on Defendants. D.E. 9; D.E. 10; *see also Rose Containerline, Inc. v. Omega Shipping Co.*, No. 10-4345, 2011 WL 1564637, at *3 (D.N.J. Apr. 25, 2011). As a result, the Court finds that default judgment is appropriate.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is granted in part. Plaintiff shall file documentation proving the purchase price of the Vehicle and indicate whether she seeks damages for the purchase price of the Vehicle under the CFA claim, the breach of warranties claims, or conversion. An appropriate Order accompanies this Opinion.

Dated: August 22, 2022

                                                                                                                        _____
                                                                                                                        John Michael Vazquez, U.S.D.J.